UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINA COTTEY, ROSEMARY DORSEY, BETH DORSEY, COTTEY, DORSEY, & DORSEY INVESTMENTS<br><br>Plaintiffs,<br><br>vs.<br><br>BRINK'S HOME SECURITY, INC. n/k/a BROADVIEW SECURITY INC.,<br><br>Defendant. | Case No. 1:09-CV-1116-TWP-MJD |

## ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendant's, Brink's Home Security, Inc. n/k/a Broadview Security, Inc. ("Brink's"), Motion for Partial Summary Judgment. The present dispute hinges on the enforcement of a limitation of liability clause contained in a Protective Service PSA ("PSA"), initialed and signed by Plaintiff Christina Cottey ("Cottey") on behalf of her real estate partnership, Cottey, Dorsey, & Dorsey Investments ("Dorsey Investments") (the plaintiffs in the above caption are referred to collectively as "Plaintiffs"). For the reasons set forth below, Brink's Motion for Partial Summary Judgment [Dkt. 30] is **GRANTED**.

## I. BACKGROUND

On July 20, 2007, Plaintiffs purchased a building formerly operated by the Channel 4 television stations ("the Building"). The Building was vacant at the time of the purchase. Shortly thereafter, Cottey, on behalf of Dorsey Investments, investigated security systems to guard against burglary and vandalism. To that end, Cottey met with a Brink's representative. They toured and inspected the Building inside and out and, according to Plaintiffs, it was readily

apparent that the Building was vacant. The Brink's representative recommended a multi-dimensional security system tailored to Plaintiffs' needs, including a backup battery in the event of a power outage. After explaining the security system's features and price, the representative entered information on the PSA and two other documents. The representative discussed the pricing and terms spelled out in the PSA, but did not specifically mention the limitation of liability clause. Subsequently, the representative handed Cottey the documents, instructing her where to initial and where to sign. In rapid order, Cottey complied, presumably without reading what she was signing. The representative never specifically directed Cottey to read the documents, and never offered Cottey the opportunity to renegotiate the terms.

In August 2008, Cottey received a call from an acquaintance that one of the Building's windows had been broken. Cottey inspected and discovered that the Building had been looted and vandalized. Apparently, the robbers cut the power to the Building to gain entry without triggering the security system. A power outage was supposed to activate the backup battery but, unfortunately, the backup battery was dead.

Initially, Plaintiffs filed an insurance claim, which was rejected based on a "vacancy" clause. Cottey also contacted Brink's as a separate potential avenue for reimbursement. Given the limitation of liability clause in the PSA, however, this call was fruitless. Brink's rebuffed Cottey and declined to pay for any damages. Plaintiffs countered with a lawsuit, alleging that Brink's breached the PSA, breached expressed or implied warranties, and was negligent.

Obviously, the effect of the language in the PSA is the fault line that divides the parties in this dispute. Immediately above the signature line, the PSA states:

> **THIS AGREEMENT CONSISTS OF SECTIONS 1 THROUGH 13 APPEARING ON THE FRONT AND REVERSE SIDE. YOU ACKNOWLEDGE THAT PRIOR TO SIGNING THIS AGREEMENT YOU RECEIVED, READ AND UNDERSTOOD A LEGIBLE, EXACT AND COMPLETELY FILLED-IN COPY OF THE AGREEMENT . . . <u>YOU FURTHER ACKNOWLEDGE THAT YOU UNDERSTAND SECTION 7 WHICH LIMITS BRINK'S LIABILITY</u> AND THAT YOU MAY INCREASE BRINK'S LIMITATION OF LIABILITY BY PAYING AN ADDITIONAL CHARGE TO BRINK'S.**

(emphasis added). Section 7(a) of the Agreement reads:

> BRINK'S DOES NOT MAKE ANY EXPRESS OR IMPLIED WARRANTY AND IN PARTICULAR DOES NOT MAKE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, BRINK'S DOES NOT WARRANT: THAT THE PROTECTIVE EQUIPMENT OR THE SERVICE WILL NOT BE DISABLED, COMPROMISED OR CIRCUMVENTED (WHETHER BY CUTTING OF THE TELEPHONE LINES OR IN SOME OTHER WAY); THAT THE PROTECTIVE EQUIPMENT WILL NOT BE IN NEED OF REPAIR; THAT THE PROTECTIVE EQUIPMENT OR SERVICE WILL PREVENT ANY LOSS OF PROPERTY OR PERSONAL INJURY BY BURGLARY, HOLD-UP, FIRE, MEDICAL PROBLEM OR OTHERWISE; OR THAT THE PROTECTIVE EQUIPMENT AND SERVICE WILL IN ALL CASES PROVIDE THE PROTECTION FOR WHICH IT IS INSTALLED. . . .

Sections 7(b) and 7© expressly inform purchasers that Brink's is not an insurer and that the onus is on the purchaser to obtain satisfactory insurance:

> YOU UNDERSTAND THAT BRINK'S IS NOT AN INSURER AND IS NOT RESPONSIBLE FOR ACTS OR OMISSIONS OF OTHERS OR FOR EVENTS BEYOND BRINK'S CONTROL. Your payment of fees and other amounts to Brink's under this Agreement relates only to the value of the Service . . . and has no relationship to, nor do Brink's or you expect them to cover, in whole or in part, any loss, damage, injury or death which might result to you or your property or any other person or property from any hazard or event or the consequence of any hazard or event which the Protective Equipment or the Service is intended to detect or avert. THE AMOUNTS PAYABLE BY YOU UNDER THIS AGREEMENT ARE NOT

SUFFICIENT TO WARRANT BRINK'S ASSUMING ANY RISK OF CONSEQUENTIAL OR OTHER DAMAGES TO YOU, EXCEPT AS STATED IN SECTION 7(e) BELOW. YOU DO NOT DESIRE THIS AGREEMENT TO PROVIDE FOR THE LIABILITY OF BRINK'S AND YOU AGREE THAT BRINK'S SHALL NOT BE LIABLE FOR LOSS OR DAMAGES DUE DIRECTLY OR INDIRECTLY TO ANY OCCURRENCE OR CONSEQUENCES THEREFROM, WHICH THE SERVICE IS DESIGNED TO DETECT OR AVERT. IN NO EVENT SHALL BRINK'S BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES HOWSOEVER CAUSED.

YOU AND BRINK'S AGREE THAT YOU HAVE THE SOLE RESPONSIBILITY TO OBTAIN WHATEVER INSURANCE YOU WANT TO HAVE IN ORDER TO COVER RISKS, LOSSES, DAMAGES, INJURIES, DEATH AND OTHER EFFECTS OF BURGLARY, FIRE, PHYSICAL DANGERS OR MEDICAL PROBLEMS AFFECTING YOU, YOUR EMPLOYEES OR ANY OTHER PERSONS WHO MAY BE IN OR NEAR YOUR LOCATION. YOU WILL RELEASE, DEFEND, INDEMNIFY AND HOLD BRINK'S AND ITS AUTHORIZED CONTRACTORS HARMLESS FROM AND AGAINST CLAIM OR LIABILITY FOR ANY RISK, LOSS, PROPERTY DAMAGE, PERSONAL INJURY, DEATH AND OTHER EFFECTS MENTIONED ABOVE.

Section 7(d) requires the purchaser to acknowledge that even if Brink's fails to meet its obligations, quantifying damages attributable to Brink's is impractical and difficult:

> You acknowledge that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from Brink's failure to perform any of the obligations under this Agreement, or the failure of the Protective Equipment to properly operate with resulting loss to you or others because of, among other things:
> (1) The uncertain amount or value of your property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the Protective Equipment or Service is designed to detect or avert;
> (2) The uncertain amount of possible damages for personal injury or death which may result from occurrences which the Protective Equipment or Service is designed to detect or avert;
> (3) The uncertainty of the response time of any police or fire department or medical emergency agency, should the police or fire department or medical emergency agency be dispatched as a result

>    of a signal being received or an audible device sounding;
>    (4) The inability to ascertain what portion, if any, of any loss or damage would be proximately caused by Brink's failure to perform or by the failure of the Protective Equipment to operate; and
>    (5) The nature of the Service to be performed by Brink's.

Finally, Section 7(e) limits Brink's liability to a defined amount:

> If Brink's or the authorized contractors do not provide the Service or otherwise fail to perform any obligation undertaken by any of them under this Agreement or are liable under negligence, strict liability, breach of warranty, breach of contract or otherwise, YOU UNDERSTAND AND AGREE THAT BRINK'S AND ITS AUTHORIZED CONTRACTORS' LIABILITY TO YOU AND ALL OTHER PERSONS IS LIMITED TO A TOTAL RECOVERY DURING THE WARRANTY PERIOD AND THEREAFTER OF NOT MORE THAN THE TOTAL AMOUNT OF FEES ACTUALLY PAID TO BRINK'S . . . DURING THE TWELVE MONTH PERIOD PRECEDING THE EVENT OR OMISSION FOR WHICH YOU AND ALL OTHER PERSONS MAY MAKE A CLAIM AGAINST BRINK'S OR ITS AUTHORIZED CONTRACTORS. YOU ACCEPT RESPONSIBILITY FOR ANY LIABILITY BEYOND THESE LIMITS AND YOU WILL MAINTAIN YOUR OWN INSURANCE COVERAGE AS YOU DESIRE TO PROTECT YOU AND OTHERS FROM ANY LOSSES EXCEEDING THESE LIMITS. YOU FURTHER AGREE THAT THE REMEDY AND LIABILITY AS LIMITED IN THIS SECTION 7 IS THE SOLE AND EXCLUSIVE REMEDY AND LIABILITY. IF YOU WISH, YOU MAY OBTAIN A HIGHER LIMITATION OF BRINK'S LIABILITY BY PAYING AN ADDITIONAL CHARGE TO BRINK'S. YOU MAY OBTAIN INFORMATION ABOUT THIS OPTION BY TELEPHONING BRINK'S CUSTOMER CARE DEPARTMENT AT (800) 445-0872.

(For ease of reference, these provisions in the Protective Services Agreement are referred to collectively as "the PSA Clause").

Plaintiffs claim that the burglary and vandalism damaged the Building to the tune of hundreds of thousands, if not over one million, dollars. The PSA Clause, however, strictly limits Plaintiffs' recovery to what it paid Brink's in the prior 12 months of service, which at $51.49 per

month, amounts to $617.88.  Obviously, this is a mere drop in the bucket compared to the alleged damages sustained.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted). "Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Slutsky-Peltz Plumbing & Heating Co., Inc. v. Vincennes Cmty. School Corp.*, 556 N.E.2d 344, 346 (Ind. Ct. App. 1990) (citation omitted).

## III.  DISCUSSION

Given that this case is based on diversity jurisdiction, the Court must apply Indiana law to determine the enforceability of the PSA Clause.  Fortunately, this is relatively well-trodden territory.  On numerous occasions, Indiana courts have grappled with liability-limiting clauses in the specific context of alarm system contracts.

In the seminal case on-point, *General Bargain Center v. American Alarm Co., Inc.*, 430

N.E.2d 407 (Ind. Ct. App. 1982), the Indiana Court of Appeals, citing to a broad swath of decisions throughout the country enforcing such clauses (and noting that it was unable to find cases to the contrary), upheld a liability-limiting clause contained in an alarm system contract. *Id*. At 410-11.  In doing so, the *American Alarm* court spelled out Indiana's general position:

> Indiana ... recognizes exculpatory clauses. Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts. However, exceptions exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public.

*Id*. at 411-12 (citations omitted).  In other words, clauses like the one at issue – those designed "to exculpate or limit damages to a nominal amount" – are generally enforceable because they are presumed to be the product of a freely bargained agreement between the parties. *See id*. at 410-12; *see also Menchhofer v. Honeywell, Inc.*, 2002 WL 24454, at * 3 (S.D. Ind. Jan. 7, 2002) (exculpatory clauses in alarm system contracts generally enforceable unless an exception applies).  This position, which has been almost universally adopted, has evolved into basic hornbook law. *See, e.g.,* Majorie A. Shields, *Validity, Construction, and Application of Exculpatory and Limitation of Liability Clauses in Burglary, Fire and Other Home and Business Monitoring Service Contract*s, 36 A.L.R. 6th 305 (2008) ("A company that provides an alarm system may, by contract, limit its liability to a specific amount or exculpate itself from liability.").

In Indiana, there are three well-recognized exceptions to this otherwise settled rule.  That is, clauses like the one at issue will not be enforced where: (1) the parties have unequal bargaining power; (2) the contract is unconscionable; or (3) the contract affects the public

7

interest or contravenes public policy. Here, Plaintiffs have unfurled a veritable hodgepodge of reasons why the PSA Clause should not be enforced, all of which are unavailing.

**A.      No Exceptions Apply**

Tracking *American Alarm*, the Court must analyze the three exceptions to the general rule of enforceability. First, Plaintiffs' arguments notwithstanding, no prodigious disparity in bargaining power existed that would preclude enforcement of the PSA. After all, Brink's is hardly the only game in town with respect to home security, and Plaintiffs were free to shop around and compare security plans of other security companies. Moreover, Plaintiffs (a commercial entity and its owners) presumably have a modicum of sophistication and business acumen, given that they own a real estate partnership. *See Menchhofer*, 2002 WL 24454, at * 4 (noting that purchaser of alarm system was an educated businessperson).

Turning to the second exception, Indiana jurisprudence recognizes two branches of unconscionability: substantive and procedural. *Id*. (citations omitted). Substantive unconscionability involves oppressively one-sided and harsh terms, and is limited to instances where the author of the contract has a monopoly or where other competitors use the same contract. *Id*. at *4-5 (citing *DiMizio v. Romo*, 756 N.E.2d 1018, 1023-24 (Ind. Ct. App. 2001)). Plaintiffs have not attempted to argue that either instance applies. Nor could they. As mentioned, Plaintiffs were free to take their business to a different alarm company. Moreover, Plaintiffs' status as owners of a commercial entity and business person weighs against a finding of substantive unconscionability. *See id*. at *5.

Procedural unconscionability, on the other hand, relates to the process by which the terms became part of the contract, and usually arises when there are irregularities in the bargaining

process. *Id*. at *5 (citing *DiMizio*, 756 N.E.2d at 1024). While Plaintiffs do not directly launch a procedural unconscionability argument, they repeatedly emphasize that the contract formation process was fatally flawed because Cottey signed the PSA without having the opportunity to read it. Stated differently, Plaintiffs argue that Cottey did not sign the PSA "knowingly and willingly." For good measure, and for the first time in this case, Plaintiffs inject a fraud argument into the proceedings, arguing that the Brink's fraudulently induced Plaintiffs into the PSA by failing to disclose the existence of the PSA Clause.[1]

This argument – which, at its core, boils down to the fact that Cottey simply failed to read the PSA – falls flat for at least two reasons. First, it is well-established in Indiana that "a person is presumed to understand the documents which [she] signs and cannot be released from the terms of a contract due to [her] failure to read it." *Clanton v. U.S.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997); *see also Shumate v. Lycan*, 675 N.E.2d 749, 753 (Ind. Ct. App. 1997) (even though he was "rushed," plaintiff's failure to read exculpatory clause was attributable to his own neglect and did not render the release unenforceable). There is no evidence that Cottey signed the PSA under duress or was incapable of understanding its terms. Brink's cannot be punished for Plaintiffs' blunder. Second, it is equally well-established that only after Plaintiffs prove the PSA unconscionable due to a disparity in bargaining power is Brink's saddled with the burden of demonstrating that it brought the PSA Clause to Cottey's attention. As discussed above, Plaintiffs have made no such showing. *See Menchhofer*, 2002 WL 24454, at * 3 ("Honeywell asserts it does not have such a burden unless and until Menchhofer proves that the contract is an

---

[1] Plaintiffs failed to plead a cause of action for fraud in their Complaint, which is arguably significant, given that fraud is subject to the heightened rigors of Fed. R. Civ. P. 9(b).

unconscionable one. Honeywell is correct."; rejecting plaintiff's argument that defendant never "informed, discussed, or brought to Affiant's attention the exculpatory clause contained in Paragraph 7 of [the agreement]."); *see also Clanton*, 686 N.E.2d at 899 ("Clanton fails to recognize, however, that this burden only applies when the other party has established that the contract is unconscionable because the enforcing party possesses such superior bargaining power that the contract is signed under economic or other duress."). Simply stated, under the undisputed facts of this case there is no suggestion that Cottey was under economic or other duress or that Brink's had superior bargaining power over Cottey and used such power to its advantage. Brink's therefore is not even required to demonstrate that it explained the PSA Clause to Cottey, thus defeating Plaintiffs' arguments grounded in fraud, unconscionability, and whether Cottey signed the contract "knowingly and willingly."

As to the third exception – whether the transaction between Brink's and Plaintiffs affects the public interest or contravenes public policy – Plaintiffs highlight that public policy determinations depend on the unique facts of each case. Given the circumstances at play, Plaintiffs essentially argue, the PSA Clause is unfair. The Court is not persuaded. Under similar circumstances, Indiana courts have ruled that agreements similar to the Brink's Protective Service Agreement do not violate public policy. *See American Alarm*, 430 N.E.2d 407; *Menchhofer*, 2002 WL 24454. For good reason: Alarm companies are not insurance companies. Alarm companies base their price on the value of their products and services, *not* the value of the property that their products and services protect. In other words, Brink's charges the same price for the same products and services, regardless of whether the underlying property houses invaluable Picassos or unsightly lawn gnomes. If alarm companies were forced to moonlight as

10

insurers, they would run the risk of insolvency or they would be forced to raise prices precipitously.  Moreover, economic fundamentals dictate that Brink's cannot make bad products and do bad work with impunity.  As the Seventh Circuit noted in a case involving an action against an alarm company, "Our society relies more heavily on competition than on liability to optimize the quality of the goods and services supplied by the private sector of the economy." *Edwards v. Honeywell, Inc.*, 50 F.3d 484, 491 (7th Cir. 1995).  If Brink's products fail with regularity, then it will stand to lose in the court of public opinion, even if it wins the motion presently before the Court.

**B.     Arguments Relating to Liquidated Damages**

Plaintiffs raise a number of separate arguments outside of the confines of the three well-recognized exceptions, all relating to liquidated damages clauses.  In effect, Plaintiffs invite the Court to pretend that the PSA Clause is a garden-variety liquidated damages clause, which it is not.  Indiana has spelled out guidelines for enforcing a liquidated damages provision:

> It is generally held in Indiana that liquidated damage provisions are enforceable where the nature of the contract is such that upon breach the resulting damages would be uncertain and <u>difficult to ascertain</u>. The sum designated as liquidated damages cannot be <u>grossly disproportionate</u> to the loss that may result, unreasonable or unconscionably in excess of the loss sought to be averted.

*American Alarm*, 430 N.E.2d at 411 (emphasis added).  Having erected a strawman, Plaintiffs seek to knock it down, arguing that the clause at issue is unenforceable because: (1) the damages are not actually difficult to ascertain; and (2) the loss is grossly disproportionate to the liquidated damages.

These arguments fall flat, primarily because they rest on the faulty assumption that the clause at issue should be treated as a liquidated damages provision – not a provision designed to

11

exculpate or limit liability in the context of security agreements. As the *American Alarm* court noted, the "obvious purpose" of a clause like the one at bar "is to exculpate or to limit damages to a nominal amount" and, therefore, "it cannot be compared with a typical liquidated damages provision which provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Id*. at 411. Here, as discussed, the operative standard is that exculpatory clauses found in security agreements are generally enforceable unless one of three exceptions applies. By almost single-mindedly focusing on liquidated damages, Plaintiffs ask the Court to apply an inapplicable standard. Further, Plaintiffs' liquidated damages arguments fail because they are irreconcilable with the actual language of the Protective Service Agreement Clause. The PSA expressly provided, "YOU UNDERSTAND THAT BRINK'S IS NOT AN INSURER . . ." and "You acknowledge that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from Brink's failure to perform any of the obligations under this Agreement." Brink's made it clear that its alarm company was not an insurance company. Plaintiffs cannot escape the fact that Cottey signed the PSA, even if the consequences are severe.

## IV. CONCLUSION

For the reasons set forth above, Brinks' Motion for Partial Summary Judgment [Dkt. 30] is **GRANTED**. Because the Agreement is enforceable, the PSA Clause limits the potential liability of Brink's to the amount actually paid by Plaintiffs under the PSA for the 12-month period immediately preceding the alleged property loss.

SO ORDERED: 01/04/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**David M. Brooks**
BROOKS KOCH & SORG
dmbrooks@bksattorneys.com,Front@bbks-law.com

**Phil L. Isenbarger**
BINGHAM MCHALE, LLP
pisenbarger@binghammchale.com,jibsen@binghammchale.com

**Nathan Lee Lundquist**
BINGHAM MCHALE LLP
nlundquist@binghammchale.com

**Jason R. Scott**
SHOOK HARDY & BACON, LLP
jscott@shb.com